**UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION
(AT CINCINNATI)**

| | | |
|---|---|---|
| **PREMIER DEALER SERVICES, INC.,** | : | CASE NO. 16-1074 |
| 555 Metro Place North, Suite 650 | : | JUDGE: |
| Dublin, Ohio 43017, | : | |
| | : | **COMPLAINT FOR INJUNCTIVE** |
| Plaintiff, | : | **AND OTHER RELIEF, WITH** |
| | : | **JURY DEMAND ENDORSED** |
| v. | : | **HEREON** |
| | : | |
| **BILL VOLZ'S WESTCHESTER AUTO CORP.** | : | |
| 2293 Crompond Road | : | |
| Cortlandt Manor, New York 10567, | : | |
| | : | |
| And | : | |
| | : | |
| **BREWSTER FORD SALES, INC.** | : | |
| 1024 Route 22 | : | |
| Brewster, New York, 10509, | : | |
| | : | |
| And | : | |
| | : | |
| **MEADOWLAND GMC, INC.** | : | |
| 1952 Route 6 | : | |
| Carmel, New York 10512, | : | |
| | : | |
| And | : | |
| | : | |
| **MEADOWLAND OF CARMEL, INC.** | : | |
| 1952 Route 6 | : | |
| Carmel, New York, 10512, | : | |
| | : | |
| Defendants. | : | |
| | : | |
| **SERVE DEFENDANTS ABOVE VIA:** | : | |
| **New York Department of State** | : | |
| **One Commerce Plaza** | : | |
| **99 Washington Avenue** | : | |
| **Albany, New York 12210-2822.** | : | |

**NOW COMES** Premier Dealer Services, Inc., and for its Complaint against the Defendants Bill Volz's Westchester Auto Corp., Brewster Ford Sales, Inc., Meadowland GMC, Inc., and Meadowland of Carmel, Inc., (collectively "Defendant Dealers") hereby alleges as follows:

## NATURE OF ACTION

1.  This is an action for infringement of marks registered on the U.S. Patent and Trademark Office Supplemental Register, unfair competition, and false designation of origin, under the Trademark Act of 1946, as amended (*The Lanham Act*, 15 U.S. Code §1051 *et seq.*); infringement in violation of the Copyright Act (17 U.S. Code §101, *et. seq.*); misappropriation of trade secrets, under state law; breach of contract; for contractual indemnification; conversion and replevin, arising from Defendant Dealers' various wrongful acts including the unauthorized use of Premiers' service marks, copyrighted marketing materials and forms, and Defendant Dealers' exploitation of trade secrets and proprietary commercial and business information, acquired from Premier in confidence, to mimic, and trade upon the goodwill and reputation of Premier, in violation of Premier's longstanding prior rights, and in contravention of an express written agreement with Premier.

## PARTIES

2.  Plaintiff, Premier Dealer Services, Inc. ("Premier"), is an Illinois corporation, with its principal office in Dublin, Franklin County, Ohio. Premier is in the business of providing products and services to automotive dealerships, agents and their customers.

3. Bill Volz's Westchester Auto Corp. is a New York corporation doing business as a motor vehicle dealer and having its principal place of business in Cortland Manor, New York.

4. Brewster Ford Sales, Inc., is a New York corporation doing business as a motor vehicle dealer and having its principal place of business in Brewster, New York.

5. Meadowland GMC, Inc., is a New York corporation doing business as a motor vehicle dealer and having its principal place of business in Carmel, New York.

6. Meadowland of Carmel, Inc., is a New York corporation doing business as a motor vehicle dealer and having its principal place of business in Carmel, New York.

## FACTS

7. Since approximately 1998, Premier has been in the business of creating, marketing and administering vehicle service contracts, customer loyalty programs, and other products for automobile dealers.

8. Premier has been continuously using the service marks "Lifetime Powertrain Protection" and "Lifetime Engine Protection" in commerce since May 1, 2008.

9. Premier has developed expertise in the business and has developed and maintained its competitive advantage in the marketplace in part through numerous proprietary systems and information. Premier protects these proprietary systems and information by providing them to dealers only pursuant to written agreements containing binding safeguards, including without limitation, "Administration Agreements."

10. Bill Volz's Westchester Auto Corp. entered into an Administration Agreement with Premier on August 19, 2014. A true copy of that Administration Agreement is attached at **Exhibit A**.

11. Brewster Ford Sales, Inc., entered into an Administration Agreement with Premier on August 19, 2014. A true copy of that Administration Agreement is attached at **Exhibit B**.

12. Meadowland GMC, Inc., entered into an Administration Agreement with Premier on August 19, 2014. A true copy of that Administration Agreement is attached at **Exhibit C**.

13. Meadowland of Carmel, Inc., entered into an Administration Agreement with Premier on August 19, 2014. A true copy of that Administration Agreement is attached at **Exhibit D**.

14. One of the products Premier offers is its Lifetime Powertrain Loyalty Program (the "Program"). The Program is designed to give a Lifetime Powertrain Loyalty Program Certificate ("LPLP Certificate") to customers of participating dealers. Customers are required to ensure that certain maintenance recommended by the vehicle manufacturer be performed at the dealer's service centers. Covered parts under the Program include the drive axle and its subcomponents, the transmission/transfer case and its subcomponents, and the engine and its subcomponents.

15. Premier, directly and/or through its agents, contacted the Defendant Dealers in 2014 and made them aware of the benefits available through participation in the Program.

16. Defendant Dealers represented that they were interested in participating in the Program and incorporating the Program into their businesses and entered into the Administration Agreements to that end.

17. Premier serviced Defendant Dealers' accounts, shared commissions, and shared confidential and proprietary data and information with Defendant Dealers, at their request, including without limitation marketing materials, the LPLP Certificate, loss ratios, data entry, data reports, and session statements.

18. Premier provided Defendant Dealers with proprietary marketing and other confidential business information necessary for their implementation of the Program in their dealerships.

19. Section 7.6 of each of the Defendant Dealers' Administration Agreements specifies that the Agreements shall be "construed in accordance with the laws of the State of Ohio."

20. Under the terms of each of the Administration Agreements, Defendant Dealers agreed to participate in the Lifetime Powertrain Protection and Lifetime Engine Protection plans for Defendant Dealers, to arrange for insurers and to process claims.

21. The Administration Agreements further contained provisions acknowledging and addressing the use of Premier's intellectual property. Specifically, each of the Defendant Dealers agreed in Section 7.8 as follows:

> Intellectual Property. Premier must approve in writing all materials used by Dealer utilizing Premier's or the insurer's name, trademarks, service marks, logos or trade names. This general prohibition will specifically include, but shall not be limited to, business cards, web content, letterheads and promotional and/or advertising materials. All forms, records, and supplies, including, but not limited to insurance forms and rate charts, provided by Premier, are and will remain the property of Premier. Dealer shall maintain positive control over all Program consumer forms and shall be and remain fully liable to

5

>Premier for any unauthorized use by any person of any forms proved by Premier to Dealer.

22. Similarly, the agreements further contained provisions acknowledging and addressing the use of Premier's proprietary information. Specifically, Defendant Dealers agreed in Section 7.11 as follows:

>Proprietary Information. Dealer acknowledges that all information obtained in the scope of its relationship with Premier including but not limited to the following: trade secrets, marketing strategy, customer lists, Program performance data, past requirements of customers, and methods of doing business, to the extent that such information is not generally known by competitors, shall be deemed Proprietary Information of Premier and the insurer. As a condition of this authorization and thereafter, Dealer agrees not to make use of or disclose to any third parties, and Proprietary Information obtained as a result of or in connection with the relationship contemplated herein. All computer systems, procedures, forms, controls, methods, programs, software, hardware, reports, compilations, used or developed while an agent of Premier are the exclusive property of Premier or the insurer and may not be shared, sold, disclosed in any manner either during the term of this Agreement or at any time thereafter. Dealer acknowledges that it is the intent of this paragraph to make the insurer the beneficiary of the proscriptions with authority to take appropriate action at law or equity to enforce this provision.

23. Between August 19, 2014 and the present, Defendant Dealers exercised rights under the Administration Agreements and enrolled customers in the Program.

24. During or after February 2016, Defendant Dealers ostensibly ceased using the Program and did not enroll customers in the Program.

25. At some time after August 19, 2014, Defendant Dealers took various actions to replicate Premier's Program without Premier's knowledge or consent.

26. Defendant Dealers acted in concert with the common objective of hijacking the Program, obtaining its benefits, and depriving Premier of the benefits it was entitled to under the Administration Agreements as the creator of the Program.

27. In engaging in this conduct, Defendant Dealers not only replicated Premier's forms nearly verbatim but also used Premier's trademarked logo without Premier's knowledge or authorization, all in violation of Section 7.8 of the Administration Agreements as quoted above. Section 3.10 of the Administration Agreement further states: "Dealer shall utilize only current approved Program forms. Dealer shall not modify, waive, alter, or change, whether orally or in writing, any of the Program materials."

28. Premier learned of Defendant Dealers' illegal scheme only when one or more of its employees or agents visited Defendant Dealers places of business and observed that Defendant Dealers had copied the marketing and administrative materials provided by Premier to circumvent Premier and implement a program substantially similar to the Program to be provided by Premier on their own.

29. In fact, Defendant Dealers copied Premier's LPLP Certificate and are using the same form, with minor modifications, to give to customers. A copy of the form used by Defendant Dealers is attached hereto as **Exhibit E**.

30. Section 6.3 of each of the Administration Agreements specifies that the Agreement "shall automatically terminate if Dealer: A. commits fraud; B. sells, transfers or merges the business to a successor person or entity (unless this Agreement has been assigned to such successor with the written consent of Premier); [or] H. fails to pay Premier for any Program business." By operation of their own conduct, Defendant Dealers terminated the Administration Agreements per Section 6.3.

31. Following termination of the Administration Agreements, Defendant Dealers were obligated under Section 6.4 to "return to Premier, or store in a safe place for pick-up by Premier's agent, informing Premier that it is doing so, all Program forms,

applications, brochures, supplies, and other property furnished by Premier to Dealer." Defendant Dealers have willfully failed to comply with Section 6.4 of the Administration Agreements.

32. Defendant Dealers have acted willfully and maliciously and in wanton disregard for the rights of Premier. At all times, Defendant Dealers have had actual knowledge that their conduct: was and remains unlawful; was and remains in contravention of Premier's rights; and would proximately result in significant injury to Premier.

33. Defendant Dealers' conduct has caused, and, if allowed to continue, will continue to cause, irreparable damage to Premier's business, reputation, and goodwill. Regarding these damages, Premier has no adequate remedy at law.

## JURISDICTION AND VENUE

34. This Court has jurisdiction over this action (1) pursuant to 28 U.S. Code §1331, because the matter arises under the laws of the United States, namely, the Copyright Act (17 U.S. Code §101 *et. seq.*) and the Lanham Trademark Act (28 U.S. Code §1125(a); pursuant to 28 U.S. Code §1338(a) and (b) because the matter arises under Acts of Congress, including acts relating to copyright and trademarks and related unfair competition claims filed therewith.

35. Per 28 U.S. Code §1332, this Court has jurisdiction over the dispute because this is an action between citizens of different states and the amount in controversy exceeds $75,000.00.

36. Per 28 U.S. Code §1367(a), this Court has supplemental jurisdiction over Premier's related claims under the laws of New York and Ohio.

37. Section 7.3 of each of the Administration Agreements states in part:

> Consent to Suit and Jurisdiction. In the event Premier initiates legal action against Dealer to obtain legal or equitable relief against Dealer for the breach of this Agreement, Dealer hereby consents to a court of competent jurisdiction in Hamilton County, Ohio or in federal court for the Southern District of Ohio, Western Division, and hereby waives any and all defenses or objections to such legal action based on lack of personal jurisdiction or improper venue.

38. By operation of Section 7.3 of each of the Administration Agreements, this Court has personal jurisdiction over the parties as they reside in, and/or have consented to the resolution of this dispute in this Court.

39. Venue is proper in this District under 28 U.S. Code §§ 1391(a), (b) and (c) and otherwise per Section 7.3 of each of the Administration Agreements.

## COUNT I
## COPYRIGHT INFRINGEMENT

40. Premier incorporates the preceding allegations of its Complaint as if rewritten verbatim herein.

41. Premier is the exclusive owner of copyrighted forms for use in its business, including the LPLP Certificate. A true copy of the LPLP Certificate is attached as **Exhibit F.**

42. Premier registered its copyright with the U.S. Copyright Office and was assigned Registration Numbers TX0007741273.  A true copy of the registration for the LPLP Certificate is attached as **Exhibit G**.

43. No license or authorization has been granted to Defendant Dealers to use this LPLP Certificate, other than the rights set forth in the Administration Agreement.

44. Defendant Dealers' continued reproduction and use Premier's copyrighted work constitutes continued copyright infringement.  Defendant Dealers' copying of

9

Premier's LPLP Certificate and use of its modified form violates Premier's copyright and the exclusive rights held by Premier.

45. Defendant Dealers, conscious of the unlawfulness of their conduct, attempted to make insignificant changes to the wording of Premier's LPLP Certificate and the order of that wording. The trivial character of the changes Defendant Dealers made to Premier's LPLP Certificate is illustrated in **Exhibit H**, where Defendant Dealers' changes are depicted as a "redlined" document.

46. Defendant Dealers' infringement of Premier's exclusive rights was and is willful.

47. Defendant Dealers infringed Premier's copyright to obtain a commercial advantage in the market.

48. As a result of Defendant Dealers' acts of copyright infringement and the foregoing allegations, Premier has suffered damages in an amount to be determined at trial and is entitled to statutory damages under the Copyright Act.

## COUNT II
## TRADEMARK INFRINGEMENT

49. Premier incorporates the preceding allegations of its Complaint as if rewritten verbatim herein.

50. Premier has used the Lifetime Powertrain Protection and other word marks, design marks, and service marks, including without limitation those shown in **Exhibit I**, continuously, in interstate commerce, since at least March 1, 2010. Premier registered said mark on April 24, 2012 and was assigned Registration No. 4,130,876.

51. Premier has also invested substantial time, effort, and financial resources, in the development, promotion, and protection of these marks.

52. Premier's word marks, design marks, and service marks are suggestive and inherently distinctive. The marks have also acquired distinctiveness and secondary meaning in the marketplace, in that consumers associate the marks with a single source of origin, namely, Premier.

53. Defendant Dealers have unlawfully and without authority used Premier's protected marks in their marketing materials, including without limitation the materials shown in **Exhibit J**.  Defendant Dealers' use of Premiers' marks, marketing materials and the like, has caused, and is likely to cause confusion, including initial interest confusion, mistake, and/or deception as to the source or origin of Defendant Dealers' goods, in that the public, and others, are likely to believe that Defendant Dealers' goods are supplied by, sponsored by, approved by, licensed by, affiliated with, or in some other way legitimately connected to Premier, all in violation of 15 U.S. Code §1125(a).

54. Defendant Dealers, by their above-enumerated acts, have willfully and knowingly infringed Premier's rights in and to its service marks, and Defendant Dealers threaten to further violate and infringe Premier's said rights.

55. As a direct and proximate result of Defendant Dealers' trademark infringement, Premier has suffered, and will continue to suffer, loss of income, profits, and goodwill, and Defendant Dealers have acquired, and will continue to unfairly acquire, income, profits, and goodwill to which they are not entitled.

56. Premier is entitled to recover from Defendant Dealers, the damages sustained as a result of their infringing acts, under 15 U.S. Code §1117(a).  Premier is unable to ascertain, at present, the full extent of the monetary damages it has suffered by Defendant Dealers' acts.

57. Defendant Dealers' conduct was intentional, and without foundation in law. Accordingly, Premier is entitled to an award of treble damages per 15 U.S. Code §1117(a).

58. The nature and scope of Defendant Dealers' acts make this an exceptional case, warranting attorney fees, and costs, under 15 U.S. Code §1117(a)(3).

## COUNT III
## FEDERAL UNFAIR COMPETITION AND
## FALSE DESIGNATION OF ORIGIN

59. Premier incorporates the preceding allegations of its Complaint as if rewritten verbatim herein.

60. Premier's distinctive marks have become uniquely associated with Premier and identify Premier's goods to the public.

61. Defendant Dealers' use, and threatened continued use, of confusingly similar trade dress, and Premier's marks, in connection with their own Programs, constitute unfair competition, and false designations of origin as to the goods sold by and on behalf of Defendant Dealers, and comprise false and misleading representations, in violation of 15 U.S. Code §1125(a).

62. As a direct and proximate result of Defendant Dealers' false designations of origin and false and misleading representations, Premier has been damaged, and unless Defendant Dealers are restrained by this Court, Premier will continue to suffer serious, irreparable injury.

63. Pursuant to 15 U.S. Code §1117(a), Premier is entitled to recover from Defendant Dealers, the damages sustained as a result of their acts. Premier is unable to ascertain, at present, the full extent of the monetary damages it has suffered thereby.

64. Defendant Dealers' conduct was intentional, and without foundation in law. Accordingly, Premier is entitled to an award of treble damages against Defendant Dealers, under 15 U.S. Code §1117(a).

65. Defendant Dealers' acts make this an exceptional case, warranting an award of attorney fees and costs, under 15 U.S. Code § 1117(a).

## COUNT IV
## MISAPPROPRIATION OF TRADE SECRETS

66. Premier incorporates the preceding allegations of its Complaint as if rewritten verbatim herein.

67. Premier shared information and data, including but not limited to proprietary and confidential information and data, with Defendant Dealers. The information shared by Premier was business and technical information, including without limitation its business formula, patterns, programs, methods, techniques, processes, and compilations of information.

68. Premier's proprietary and confidential information derives independent economic value by not being accessible to Premier's competitors, who can profit from its use or disclosure.

69. Premier has taken more than adequate measures, under the circumstances, to maintain the secrecy of the proprietary and confidential information above-described, including by having Defendant Dealers sign agreements requiring that such information be kept confidential, and not disclosed to third parties.

70. Premier's proprietary and confidential information constitute trade secrets, subject to protection under Ohio Revised Code §1333.61 *et seq.*, and the common law of the state of New York.

71. The foregoing conduct of Defendant Dealers, including, but not limited to, the disclosure, sharing, and commercial exploitation of Premier's proprietary methods and procedures, constitutes an actual, as well as threatened, misappropriation and misuse of Premier's trade secret-protected information, under Ohio Revised Code §1333.61, *et seq.*, and New York law.

72. Defendant Dealers are liable to Premier for their receipt and exploitation of the trade secrets misappropriated and improperly disclosed by Defendant Dealers, because, at the times of such disclosures and exploitation, Defendant Dealers knew that its awareness of these trade secrets was derived from and through persons who owed duties to Premier, to maintain their secrecy, and limit their use.

73. Premier is entitled to recover damages from Defendant Dealers, for the actual losses caused by their trade secret misappropriation, and any unjust enrichment Defendant Dealers have derived their use that is not taken into account in computing the damages for actual loss. Premier is unable to ascertain, at present, the full extent of the losses suffered as a result of Defendant Dealers' conduct, or the extent to which Defendant Dealers have been unjustly enriched.

## COUNT V
## CONVERSION

74. Premier incorporates the preceding allegations of its Complaint as if rewritten verbatim herein.

75. Defendant Dealers' continued possession and unlawful and improper use of Premier's intellectual property, including but not limited to copyrighted material, service marks, and trade secrets, constitutes a conversion of Premier's property.

76. As a direct and proximate result of Defendant Dealers' conversion, Premier has suffered damages in an amount exceeding the jurisdictional threshold of this Court to be proven at trial.

## COUNT VI
## REPLEVIN

77. Premier incorporates the preceding allegations of its Complaint as if rewritten verbatim herein.

78. Defendant Dealers' possession of Premier's intellectual property, including but not limited to copyrighted material, service marks, and trade secrets, violates Premier's contractual rights.

79. The property of Premier unlawfully retained by Defendant Dealers constitutes unique chattels.

80. Premier is entitled to an order directing Defendant Dealers to return its property.

## COUNT VII
## UNJUST ENRICHMENT

81. Premier incorporates the preceding allegations of its Complaint as if rewritten verbatim herein.

82. This Count, arising under Ohio and/or New York law, is for unjust enrichment in the event this Court finds no other remedy available to Premier under any of the foregoing causes of action.

83. Defendant Dealers were enriched to the extent that they benefitted from the information, good will and training provided by Premier and Premier was accordingly damaged without justification or cause.

## COUNT VIII
## CIVIL CONSPIRACY

84. Premier incorporates the preceding allegations of its Complaint as if rewritten verbatim herein.

85. Defendant Dealers entered into a civil conspiracy having numerous unlawful objects including: interfering with Premier's contractual and business relations; misappropriating the trade secrets and intellectual property of Premier for their own use; and misappropriating Premier's business.

86. In furtherance of that civil conspiracy, Defendant Dealers committed certain overt acts, including without limitation: the diversion by Premier's business, the violation of Premier's copyrights and marks, the cloning of Premier's business, and the use and disclosure of Premier's proprietary information and trade secrets.

87. The fact that Defendant Dealers have acted in concert is evident by use of identical infringing marketing materials and an identical modification of Premier's LPLP Certificate.

88. As a direct and proximate result of Defendant Dealers' tortious conduct, Premier has suffered damage herein, in an amount exceeding the jurisdictional threshold of this Court to be proven at trial.

## COUNT IX
## BREACH OF CONTRACT

89. Premier incorporates the preceding allegations of its Complaint as if rewritten verbatim herein.

90. The acts of each of the Defendant Dealers constitute breaches of each of the Administration Agreements.

91. The breach by the Defendant Dealers of the Administration Agreements has proximately caused Premier to suffer damages in amount exceeding the jurisdictional threshold of this Court to be proven at trial.

## COUNT X
## INDEMNIFICATION AND ATTORNEYS FEES

92. Premier incorporates the preceding allegations of its Complaint as if rewritten verbatim herein.

93. Paragraph 7.7.A of each of the Administration Agreements provides:

> Indemnification and Hold Harmless. Dealer and Premier agree to indemnify and to defend and hold the other harmless from and against any and all loss, claims, causes of cause of action, liability, expense, cost or other damage of any kind or amount whatsoever, including without limitation reasonable attorneys fees, costs of court and other costs of defense or prosecution, which arise out of or result from their respective employees, or representatives (i) breach of or failure to perform any of its duties or obligations hereunder; (ii) acting beyond the scope of any authority as may have been granted herein; or (iii) negligence, omission or willful conduct.  This provision will survive termination of this Agreement.

94. Section 7.3 of each of the Administration Agreements states in part: "In any legal action, the prevailing party shall be entitled to recover from the non-prevailing party its reasonable attorney fees."

95. Pursuant to these provisions, Premier is entitled to recover all expenses, damages and costs, including attorneys fees resulting from the breach by Defendant Dealers and their employees and representatives, including all costs and attorneys fees incurred in prosecuting this action.

## COUNT XI
## INJUNCTIVE RELIEF—COPYRIGHT

96. Premier incorporates the preceding allegations of its Complaint as if rewritten verbatim herein.

17

97. Unless enjoined from doing so, Defendant Dealers' infringement will continue, causing Premier irreparable harm by depriving it of the right to control the use of its copyrighted works and receive revenue from them.

98. The public interest favors protection of copyrights and enforcement of such exclusive rights against those who deliberately and willfully infringe them.

99. Premier is therefore entitled to a preliminary and permanent injunction barring Defendant Dealers from continued infringement of the copyrights of Premier and other equitable relief.

## COUNT XII
## INJUNCTIVE RELIEF—TRADEMARK

100. Premier incorporates the preceding allegations of its Complaint as if rewritten verbatim herein.

101. Defendant Dealers' acts of trademark infringement will cause additional irreparable injury to Premier if Defendant Dealers are not restrained from further violations of Premier's rights.

102. Premier is entitled to an order, preliminarily and permanently enjoining Defendant Dealers from further use of the marks, or any other mark confusingly similar to Premier's marks under 15 U.S. Code § 1116(a).

103. Per 15 U.S. Code §1116(a), Premier is entitled to an order, preliminarily and permanently enjoining Defendant Dealers from further acts of unfair competition, false designations of origin, and false and misleading representations.

104. Premier is entitled to an order, preliminarily and permanently enjoining Defendant Dealers from further misappropriation of Premier's trade secrets to eliminate

their unfair commercial advantage New York law and Ohio Revised Code §1333.61, *et seq.*

## COUNT XIII
## PUNITIVE DAMAGES

105. Premier incorporates the preceding allegations of its Complaint as if rewritten verbatim herein.

106. The tortious actions of Defendant Dealers herein constitute willful and wanton conduct exhibiting a reckless disregard for the rights of Premier.

107. Premier is entitled to an award of punitive damages, costs and attorney's fees.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff Premier Dealer Services prays for judgment against all Defendants, jointly and severally, as follows:

A. Trial by jury on all issues so triable;

B. Actual damages in an amount exceeding $75,000;

C. Disgorgement per 17 U.S. Code §504(b) and/or 15 U.S. Code §1117(a), of any and all profits resulting from Defendants' wrongful acts;

D. An Order directing an accounting per 17 U.S. Code § 504(b) of any and all gains profits and advantages derived directly or indirectly from their use of Premier's copyrighted material;

E. At the election of Premier after conducting appropriate discovery, an Order per 17 U.S. Code §504(c)(1), requiring Defendants to pay an amount of statutory damages in a sum of not less than $30,000.00 per work infringed;

F. That, based on the Court's finding that Defendants acted willfully, an Order per 17 U.S. Code §504(c)(2), at the election of Premier after conducting appropriate discovery, requiring Defendants to pay an award of increased statutory damages in a sum of not less than $150,000.00 per work infringed;

G. That, pursuant to 15 U.S. Code §1117(a), the Court order Defendants to pay treble damages to Premier;

H. An Order per 17 U.S. Code §505, 15 U.S. Code §1117(a), and the indemnification provision of the Administration Agreement, directing Defendants to pay Premier's full cost, legal expenses and reasonable attorneys fees incurred in this action;

I. An Order preliminarily without bond and permanently enjoining Defendants, their agents, representatives, officers, employees, and all those acting in concert therewith, to restrain and enjoin Defendants as set forth herein, including without limitation, regarding (i) infringement of Premier's copyrights; (ii) use of the marks, and designations which infringe Premier's rights or which are confusingly similar thereto; (iii) Defendants' acts of unfair competition, false designation of origin, and false and misleading representations with respect thereto; (iv) further misappropriation and disclosure of Premier's trade secrets; and (v), further breaches of the obligations embodied in the Administration Agreement signed by Defendants;

J. An Order requiring Defendants to return all Premier's property;

K. An award of punitive damages;

L. An Award of pre- and post-judgment interest; and

M. Such other relief as the Court deems appropriate.

Respectfully submitted this the 11th day of November, 2016.

/s/ Scott R. Thomas
Scott R. Thomas (0061040)
HEMMER DEFRANK WESSELS PLLC
250 Grandview Drive, Suite 500
Ft. Mitchell, Kentucky 41017
Telephone: (859) 344-1188
Fax: (859) 578-3869
Email: sthomas@HemmerLaw.com

*Counsel for Plaintiff*
*Premier Dealer Services, Inc.*